**STANDARD CHLORINE OF DELAWARE, INC.,
Plaintiff**

v.

**Anthony R. SINIBALDI, Michael O. Sinibaldi, Dover Steel Company, Inc., Comma Corporation, Lorraine Rental & Equipment Co., Inc., Delaware Rental Co., SS & H Realty, SHS Holding Corp., A.M.B. Construction Co., Inc., All–American Promotions, Inc., George Mantakounis, and Mantas Painting Company, Defendants.**

Civ.A. No. 91–188–SLR.

United States District Court,
D. Delaware.

Dec. 30, 1992.

235

Richard D. Allen, and Karen L. Pascale, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for plaintiff.

Aubrey B. Lank, and Brian A. Sullivan, of Theisen, Lank, Mulford & Goldberg, Wilmington, DE, for defendants Anthony R. Sinibaldi, Michael O. Sinibaldi, Comma Corp., Lorraine Rental & Equipment Co., Inc., Delaware Rental Co., SS & H Realty, SHS Holding Corp., A.M.B. Const. Co., Inc., and All–American Promotions, Inc.; Henry F. Siedzikowski, Brian P. Kenney, Timothy T. Myers, and Frederick P. Santarelli, of Elliott, Vanaskie & Riley, Blue Bell, PA., of counsel.

Richard Galperin, of Morris, James, Hitchens & Williams, and Aubrey B. Lank, and Brian A. Sullivan, of Theisen, Lank, Mulford & Goldberg, Wilmington, DE, for defendant Dover Steel Co., Inc.; Henry F. Siedzikowski, Brian P. Kenney, Timothy T. Myers, and Frederick P. Santarelli, of Elliott, Vanaskie & Riley, Blue Bell, PA., of counsel.

Gordon L. McLaughlin, Wilmington, DE, for defendants George Mantakounis and Mantas Painting Co.

Matthew J. Lynch, Jr., of Wilmington Trust Co., Wilmington, DE, for non-party Wilmington Trust Co.

## OPINION

SUE L. ROBINSON, District Judge.

### I. Introduction

This is a civil action brought by plaintiff, Standard Chlorine of Delaware, Inc. ("Standard"), against various individuals and companies which, according to Standard's pleadings, engaged in a long-term scheme aimed at defrauding Standard of millions of dollars. The original Complaint named as party-defendants two individuals, Anthony R. Sinibaldi ("AS") and Michael O. Sinibaldi ("MS"), AS's brother, as well as eight companies [1], Dover Steel Company, Inc. ("Dover") [2], Comma Corporation, Lorraine Rental & Equipment Company, Inc. ("Lorraine Rental"), Delaware Rental Company ("Delaware Rental"), SS & H Realty ("SS & H"), SHS Holding Corp. ("SHS"), A.M.B. Construction Company, Inc. ("AMB") and All–American Promotions, Inc. ("All–American").[3] Standard subsequently filed an Amended Complaint which, inter alia, added an additional individual defendant, George Mantakounis ("Mantakounis"), as well as another company defendant, Mantas Painting ("Mantas").[4]

---

[1]. Standard alleges that AS and MS have ownership interests in a number of the company defendants and also alleges that some of the company defendants are owned wholly or party by other company defendants.

[2]. The Court is aware that Dover has filed a petition in the United States Bankruptcy Court for the District of Delaware, No. 92–1541, under Chapter 7 of Title 11 of the United States Code. (See D.I. 99) Accordingly, the continuation of this action against Dover is automatically stayed pursuant to section 362 of the Bankruptcy Code. The Court issued an Order (D.I. 100) requesting the parties' views on the effect of the automatic stay on the motions presently pending in this case. The parties' responses to the Order indicate that they believe the Court can resolve all pending motions notwithstanding the automatic stay as to Dover. (See D.I. 100, D.I. 101)

[3]. The Court herein will refer collectively to these companies as the "Company Defendants". Similarly, the Court will refer to AS and MS, together with the Company Defendants, collectively as "Defendants".

[4]. The Court herein will refer collectively to Mantakounis and Mantas as "the Mantas Defendants". It should be noted that, according to the Amended complaint, Mantakounis is the owner of Mantas Painting.

Federal jurisdiction is premised on Standard's inclusion in its pleadings of a number of federal claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). Standard also asserted a number of pendent state law claims in its pleadings, including claims of fraud and breach of fiduciary duty. These claims are grounded on Standard's lengthy averments of fact which detail an elaborate scheme through which Defendants and Mantas Defendants allegedly sought to defraud Standard of substantial funds.

Presently before the Court are a number of motions, including discovery-related motions and motions to dismiss Standard's pleadings for, *inter alia*, failure to state a claim upon which relief may be granted. The factual averments set forth in the Amended Complaint, which must be taken as true for purposes of the pending motions to dismiss Standard's pleadings, *Marshall–Silver Construction Company, Inc. v. Mendel*, 835 F.2d 63, 64–66 (3d Cir.1987), are briefly summarized below.

### A. Brief Summary of Standard's Allegations of Fact

Standard is a Delaware corporation with its principal manufacturing facility (the "Plant") located in Delaware City, Delaware. Standard is a major producer of chlorinated benzenes, which it first began producing at its Plant in 1966. AS and MS both are former employees of Standard. Standard employed AS from 1966 until December 1990, when he was terminated. During his employment at Standard, AS held various positions at different times, including the position of Assistant Plant Manager, which he held from 1974 until 1977, when AS became Standard's Vice President for Manufacturing. MS worked for Standard from 1966 until May 1987, when he retired. MS also held several different positions at Standard during his employment, including the position of Maintenance Superintendent, which he held from 1977 until 1983, when MS became Plant

Engineer and Manager of the Plant's Maintenance Department.

The allegations underlying Standard's claim that Defendants and Mantas Defendants defrauded plaintiff and engaged in a pattern of racketeering which injured plaintiff and, according to Standard, violated various provisions of RICO briefly are as follows:

AS and MS, while executives of Standard, acting in concert with the Company Defendants and others, set up a scheme to defraud Standard by secretly becoming the owners of several "outside" contractors, in order to profit from Standard's periodic needs for steel fabrication, maintenance and repair services. Hiding from Standard their interests in these contractors for a period of over 10 years, AS and MS willfully and repeatedly injured Standard and profited at Standard's expense, by awarding various kinds of work to these contractors, by overcharging Standard for the work done, by permitting these contractors to do work of poor quality, and by retaliating against Standard employees who were in a position to make defendants' wrongdoing known to Standard's senior management. In addition, AS and MS (as well as [Mantakounis]) further profited improperly at Standard's expense by directing large amounts of business to Mantas Painting in exchange for substantial payments to them, directly or indirectly, from Mantas Painting. Defendants succeeded in concealing their scheme until 1990, when an investigation into possible improprieties at the Plant revealed the history [of misconduct] described [in Standard's pleadings].

(D.I. 72 at ¶ 21)[5]

### B. Pending motions

There are numerous motions pending before the Court which will be resolved herein.

Defendants initially filed a motion to dismiss (D.I. 18) the original Complaint (D.I. 1), which was fully briefed by the parties. (See D.I. Nos. 22, 35, 38, 54, 59, 60, 101, 102) Standard, however, filed an Amended Com-

---

5. This discussion is intended to provide only a brief summary of some of Standard's allegations and claims against the defendants to this action.

The Court will discuss additional factual allegations supplied by Standard's pleadings as needed below.

plaint which, in the Court's view, rendered moot Defendants' motion to dismiss the original Complaint. Accordingly, Defendants' motion to dismiss Standard's original Complaint will be denied as moot.[6]

Defendants then filed a motion to dismiss (D.I. 75) Standard's Amended Complaint (D.I. 72). Although it appears from the record that Defendants did not submit any briefs in support of their motion to dismiss the Amended Complaint, Defendants have incorporated by reference their various briefs filed in connection with their initial motion to dismiss into their motion to dismiss Standard's amended pleading. (See D.I. 75 at ¶¶ 4–6) The court record indicates that Standard similarly has decided to rely on its briefs responsive to Defendants' motion to dismiss the original Complaint in opposing Defendants' motion to dismiss the Amended Complaint.

Mantas Defendants also moved to dismiss (D.I. 83, 85) the Amended Complaint as to them. This motion was fully briefed by Mantas Defendants and Standard. (See D.I. Nos. 84, 86, 88, 91, 92) In addition, Mantas Defendants filed an application (D.I. 93) for oral argument on its motion to dismiss. The Court will deny the application since the parties' briefs provided sufficient information for the Court to resolve this motion without oral argument.

A number of discovery-related motions are also presently pending before the Court.

AS moves the Court to compel Standard's production of certain insurance policies. The parties have indicated that Standard complied with AS's discovery request. Accordingly, this motion will be denied as moot.

Standard moves for entry of a confidentiality order. (D.I. 62). The parties completed briefing on this motion. (D.I. Nos. 62, 64, 66)

Standard and Defendants both filed motions to compel compliance with their respective document production requests. These motions were fully briefed by the parties as well. (D.I. Nos. 67, 68, 69, 71)

Mantas Defendants move for a protective order staying discovery as to them. (D.I. 94) Standard and Mantas Defendants filed briefs on this motion. (D.I. Nos. 95, 96, 97) Additionally, Mantas Defendants submitted an application for oral argument on this motion. (D.I. 98) The Court will deny Mantas Defendants' application since the parties' briefs sufficiently addressed the issues relevant to this motion such that the Court can resolve it without oral argument.

Wilmington Trust Company ("Wilmington Trust" or "the bank") filed a non-party motion for a protective order (D.I. 63) which seeks to quash or modify a subpoena duces tecum which Standard served on the bank. This motion was briefed by Standard as well as the bank and, like the other motions still pending in this case, is ripe for judicial action. (D.I. 63 and D.I. 65)

## II. Defendants' Motion to Dismiss the Amended Complaint

Defendants move to dismiss the Amended Complaint on a variety of grounds.

### A. RICO "Enterprise"

■ In seeking dismissal of the Complaint for failure to state a RICO claim, defendants contend, *inter alia,* that plaintiffs failed "to inform Defendants, and this Court, who or what is the RICO 'enterprise' with respect to each separate RICO Count." (D.I. 22 at 13, n. 9)

■ Plaintiff clearly alleged in its Complaint[7], however, that "[t]he association in

---

6. Defendants filed an application for oral argument on their motion to dismiss the original Complaint. (D.I. 40) Since the Court already held oral argument on said motion on June 18, 1992, Defendants' application will be denied as moot.

7. As indicated above, Standard has filed an Amended Complaint, (D.I. 72). It appears that Standard amended its original pleading primarily to add new parties, although some additional

averments of fact and claims also were included in the Amended Complaint. When defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) and when the parties briefed this motion, Standard had not yet filed its Amended Complaint. Since the allegations of the Complaint appear to be fully incorporated into the Amended Complaint, and since the parties refer to Standard's initial Complaint throughout their briefs, the Court *sometimes* will refer to Stan-

fact of all defendants constitutes an 'enterprise' within the meaning of 18 U.S.C. § 1961(4)." (D.I. 1 at ¶ 166)[8] *See Seville Indus. Machinery,* 742 F.2d at 790 (plaintiff identified the four entities it believed were the enterprises that conspired against it and the "rules of pleading require nothing more at this early juncture than that bare allegation"); *Cemar, Inc. v. Nissan Motor Corp.,* Civ. No. 87–165–CMW, slip op., 1990 WL 3038 (D.Del.1990) (plaintiff is not required to establish the enterprise requirement, or any other requirement, at the pleading stage; it is enough to identify the enterprise by stating that the defendants formed the enterprise).[9]

Defendants' contention that plaintiff failed to plead a RICO enterprise, therefore, is without merit.

### B. The RICO "Separate Existence" Requirement

■ The essential elements of a civil RICO claim are "(1) the existence of a RICO 'enterprise'; (2) the existence of 'a pattern of racketeering activity'; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO 'enterprise'; and (4) resulting injury to plaintiff, in his business or property." *Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 953 (D.Del.1987). In addition, to establish the existence of a RICO enterprise, a plaintiff must demonstrate that (1) the enterprise is an ongoing organization, with some form of structure which is used in making and carrying out decisions; (2) the enterprise members function as a continuing unit with established duties; and (3) the enterprise has an existence separate from the pattern of racketeering activity in which it engages. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981);

accord *United States v. Riccobene,* 709 F.2d 214, 221 (3d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *Seville Indus. Machinery,* 742 F.2d at 789–90.

■ Defendants rely on this third element, the separate existence requirement, in moving to dismiss plaintiff's RICO claims. Defendants' reliance on the separate existence requirement, in this context, is misplaced. The Third Circuit expressly held in *Seville* that these three requirements are necessary to prove—not to plead—the existence of a RICO enterprise. Indeed, the Third Circuit in *Seville* reversed the district court's decision to dismiss the complaint for failure to plead the *Riccobene–Turkette* requirements. In reversing, the court held as follows:

[T]he district court confused what must be pleaded with what must be proved. *Riccobene* and *Turkette* certainly stand for the proposition that a plaintiff, to recover, must prove that an alleged enterprise possesses the three described attributes. But neither case speaks to what must be pleaded in order to state a cause of action. The district court erred in applying the *Riccobene–Turkette* proof analysis to the allegations of the complaint.

We need cite no authority for the proposition that the Federal Rules of Civil Procedure were designed to eliminate the vagaries of technical pleading that once plagued complainants, and to replace them with the considerably more liberal requirements of so-called "notice" pleading. Under the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details,

---

dard's original pleading for purposes of this motion.

8. An "enterprise" is broadly defined under RICO to include "any individual, partnership, corporation, association, or other legal entity, and *any union or group of individuals associated in fact although not a legal entity.*" 18 U.S.C. § 1961(4) (emphasis supplied). Under this definition, a RICO enterprise may include "virtually any *de facto* or *de jure* association." *Seville Indus. Ma-*

chinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 789 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

9. According to defendants' own brief, "Standard pleads an 'association in fact' of two individuals, [AS] and [MS], and certain corporations some of which AS and MS had some interest in and some of which they did not." (D.I. 22 at 2)

and of trial to establish fully each element of the cause of action.

*Seville,* 742 F.2d at 790.

In an effort to rebut the obvious impact of the *Seville* decision on their position, Defendants contend that their argument is based on a footnote in *Seville* which, according to Defendants, requires dismissal of Standard's RICO claims. The Third Circuit stated the following in the footnote upon which Defendants base their argument:

> In the district court and in its brief on appeal, [plaintiff] attempts to argue that it properly pleaded more enterprises than [the four entities which it had identified in its complaint as the RICO enterprise], and that its complaint should be read to allege as an enterprise any possible combination of the four named enterprises. To support this position, [plaintiff] relies on its allegations in the complaint that the four defendants/enterprises conspired with each other to defraud [plaintiff].

The district court rejected this argument on the ground that a conspiracy to perform the underlying criminal offenses, standing alone, is not sufficient to allege the existence of an enterprise. We agree. It is an essential element of the RICO cause of action that the "enterprise" be apart from the underlying pattern of racketeering activity. By limiting its allegations of conspiracy to the underlying offenses, [plaintiff] has affirmatively negated the existence of the third Riccobene factor: an enterprise separate and apart from the pattern of activity in which it engages. By its pleading, [plaintiff] has precluded itself from proving at trial that the four defendants together, or any lesser combination,

formed an "enterprise." Unless the district court allows [plaintiff] to amend its complaint, [plaintiff] will be permitted to establish as enterprises only the four entities it specifically identified as such in its complaint.

*Seville,* 742 F.2d at 790, n. 5 (citations omitted).

Defendants' reliance on this portion of the *Seville* opinion is misplaced for at least two reasons. First, Standard does not attempt, as the plaintiff did in *Seville,* to argue that it properly pleaded more RICO enterprises than the entities which it identified in its pleading as the RICO enterprise. Furthermore, Standard does not, as did the plaintiff in *Seville,* "suggest on the face of the complaint that the enterprise is the same thing as the pattern of racketeering activity—which it cannot be under *Seville.*" *Klapper,* 657 F.Supp. at 958.

For the reasons stated in the foregoing, the Court rejects Defendants' argument that Standard's RICO claims should be dismissed on the ground that it failed to satisfy the separate existence requirement.

## C. Pleading Predicate Acts of Fraud with Specificity

Defendants contend that Standard's RICO counts should be dismissed on the ground that plaintiff failed to plead the underlying predicate acts of mail and wire fraud with sufficient particularity.

Under RICO section 1961(1)(B), racketeering activity is defined to include any act indictable either under the mail fraud statute, 18 U.S.C. § 1341 [10], or under the wire fraud statute, 18 U.S.C. § 1343 [11]. In

---

**10.** The mail fraud statute provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises ..., for the purpose of executing such scheme or artifice or attempting to do so, ... knowingly causes to be delivered by mail according to the direction thereon ... any . such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
>
> 18 U.S.C. § 1341.

**11.** It is provided under the wire fraud statute, in relevant part, that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire ... communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
>
> 18 U.S.C. § 1343.

order to plead an instance of mail or wire fraud, the plaintiff must allege a scheme to defraud in which the defendant "causes" the mails or wires to be used in furtherance of the scheme, together with an allegation of specific intent to commit fraud. *See, e.g., Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Fagan,* 821 F.2d 1002, 1008 (5th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). A defendant "causes" the use of the mails or wires *in violation of* federal law when, in furtherance of the scheme to defraud, he "does an act with knowledge that the use of the mails [or wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended...." *Pereira,* 347 U.S. at 8–9, 74 S.Ct. at 363.

In *Seville,* another civil RICO case where the underlying RICO predicate acts were grounded on allegations of mail and wire fraud in violation of the federal mail and wire fraud statutes, the Third Circuit set forth what even Defendants recognize to be a "liberal standard for applying Rule 9(b)[12] to RICO predicate acts of mailings or wirings...." (D.I. 22 at 18) Specifically, the court held as follows regarding this issue:

> We approach this question mindful of our recent admonition that in applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" We conclude that the district court subjected [plaintiff's] allegations of fraud to too strict a scrutiny. Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

742 F.2d at 791 (citations omitted). *See also Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1085 (D.Del.1984) (Rule 9(b) "does not require an exhaustive cataloguing of facts but only sufficient factual specificity to provide assurance that the plaintiff has investigated ... the alleged fraud and reasonably believes that a wrong has occurred") (internal quotations and citations omitted).

■ The Court finds that the Amended Complaint at bar sufficiently "inject[ed] precision and some measure of substantiation into [Standard's] allegations of fraud", thereby satisfying the Rule 9(b) standard as interpreted by the Third Circuit in *Seville.* First, as Defendants apparently concede, Standard alleges with specificity that AS used the telephone two times, once in April 1986 and once in March 1987, purportedly in furtherance of the alleged fraudulent scheme against Standard. (D.I. 1 at ¶¶ 42, 46) Second, Standard alleges that AS caused fraudulent purchase orders to be sent via interstate wire from Standard's Delaware plant to its executive offices in New Jersey. (D.I. at ¶ 131) Third, Standard alleges that various members of the alleged RICO enterprise had various telephone conversations over interstate telephone lines in connection with the fraudulent contract proposals which were submitted by Defendants to Standard. (D.I. 1 at ¶ 132) Fourth, the Complaint (as well as the Amended Complaint) contains numerous averments indicating that fraudulent contract proposals, fraudulent invoices and fraudulent time sheets were sent by U.S. mail, all allegedly in furtherance of Defendants' racketeering scheme. (See D.I. 1 at ¶¶ 130, 131, 141, 72, 73) Fifth, the Complaint (and, likewise, the Amended Complaint) alleges that both interstate wire facilities and the federal mail service were utilized in defendants' efforts to fraudulently conceal from and misrepresent to Standard the fact of the Sinibaldi brothers' ownership interest in Dover, and to conceal Defendants' role in the chemical spill result-

---

**12.** Rule 9(b) of the Federal Rules of Civil Procedure provides in relevant part: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity."

ing from the rupture of the 404 Tank.[13] (D.I. 1 at ¶¶ 39, 42, 99, 101) Finally, Standard has alleged with sufficient specificity the facts underlying its claim that AS and MS together with the Mantas Defendants defrauded Standard of substantial funds through a kickback scheme whereby Mantas Defendants were awarded Standard jobs by AS and MS in exchange for direct and indirect payments from Mantas Defendants to AS and MS.

Although Standard has not alleged a substantial number of specific instances when Defendants and Mantas Defendants utilized the federal mail service or interstate wire facilities in furtherance of their alleged fraud scheme, it is obvious to the Court that if Standard's allegations are true, which must be assumed for present purposes, then clearly the U.S. mail service and interstate wire facilities were substantially utilized to further this elaborate, prolonged scheme. The Court, therefore, rejects Defendants' contention that Standard failed to allege underlying racketeering acts of fraud with adequate specificity.[14]

### D. Pattern of Racketeering: Relationship and Continuity

[9] Defendants' contention that Standard does not allege in its pleadings a pattern of related and continuous predicate racketeering acts similarly must fail. In order to succeed on a civil RICO claim, which requires proof of a pattern of racketeering activity, the plaintiff "must show that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original). The Third Circuit has indicated that the factors which should be considered in determining whether alleged racketeering acts are properly characterized as "continuous" and "related" include the following: "[T]he number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the

number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck v. Fidelity Union Bank/ First Nat. State,* 832 F.2d 36, 39 (3d Cir. 1987).

Predicate acts are considered related and continuous, combining to produce a pattern of racketeering activity, if they " 'have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise ... interrelated by distinguishing characteristics,' so as not to be 'isolated incidents.' " *United States v. Grayson,* 795 F.2d 278, 290 (3d Cir.1986) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985)). "[T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business" and also may be "sufficiently established where the predicates can be attributed to a defendant operating as part of a longterm association that exists for criminal purposes." *H.J. Inc.,* 492 U.S. at 242–43, 109 S.Ct. at 2902. In addition, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.*

The averments of the pleading at bar, which must be taken as true for purposes of this motion, *Marshall–Silver Construction Company,* 835 F.2d at 64–66, clearly indicate that Defendants engaged in *continuous* and *related* unlawful acts, through which they sought to systematically defraud Standard. Standard avers that defendants committed literally dozens of fraudulent acts over a fifteen-year period. Many of the unlawful acts allegedly committed by Defendants, according to the Standard's allegations, are similar and are interrelated. For example, Standard alleges that Defendants AS and MS fraudulently sought to conceal their ownership interests in Dover and other Company Defendants in furtherance of a

---

**13.** This discussion is not intended to be inclusive of all such allegations contained in the Complaint or the Amended Complaint.

**14.** For these same reasons, the Court also rejects Defendants' argument that Standard's common law fraud claims must be dismissed for failure to plead fraud with sufficient particularity. (See D.I. 22 at 35–36)

long-term scheme allegedly aimed at defrauding Standard of millions of dollars. This scheme, it is alleged, was designed to allow AS and MS to ensure (through their positions as Standard employees) that various contract work and non-contract maintenance work required by Standard would be improperly and fraudulently given to Dover and other Company Defendants. The Amended Complaint further shows that the predicate acts allegedly committed by Defendants have (1) the same victim (Standard); (2) similar and interrelated purposes (to defraud Standard of money); (3) the same or similar participants (the association-in-fact and its participants); and (4) similar methods of commission (mail and wire frauds involving bid-rigging, fraudulent invoices, misrepresentations, self-dealing, etc.). Finally, Standard clearly alleges that, for a period of fifteen years, fraud was Defendants' "regular way of doing business." Defendants' contention that the Amended Complaint does not allege a pattern of racketeering activity is without merit.

### E. RICO Section 1962(a): Injury Resulting from Investment of Income Derived from a Pattern of Racketeering Activity

■ Defendants contend that Standard's section 1962(a) [15] claim should be dismissed because "there is no possible scenario under which Plaintiff could plead that its alleged injuries were caused by a 'use or investment' of income." (D.I. 22 at 23) Although Defendants' sweeping proposition clearly goes too far, the Court agrees that controlling precedent in this circuit requires dismissal of Standard's section 1962(a) claim.

■ To sustain a civil RICO claim under any of the subsections of RICO section 1962, the plaintiff must plead and prove that his alleged injury was caused by the violative conduct described in the particular section 1962 subsection upon which he relies. 18 U.S.C. § 1964(c). The Third Circuit has held that in pleading a section 1962(a) claim spe-

cifically, the plaintiff must allege an injury that was "caused by the use or investment of income in the enterprise, rather than by the predicate racketeering acts or pattern." *Rose v. Bartle*, 871 F.2d 331, 357 (3d Cir. 1989); *accord Brittingham v. Mobil Corporation*, 943 F.2d 297, 304 (3d Cir.1991) ("A § 1962(a) violation occurs not when the defendant engages in the predicate acts, but only when he uses or invests the proceeds of that activity in an enterprise."). The Third Circuit, however, also stated in *Brittingham*, 943 F.2d at 304, that to prevail on a section 1962(a) claim, a plaintiff must "demonstrate that the use or investment of racketeering income was a 'substantial factor' in causing the injury."

In an obvious effort to state a section 1962(a) claim comporting with the just-quoted language from *Brittingham*, Standard sets forth the following allegation in its Amended Complaint:

> Defendants' use or investment of racketeering income, as aforesaid, constituted a substantial factor in the sequence of responsible causation of injuries to Standard's business or property over a 15–year period of time. Such use of reinvestment did not constitute a normal reinvestment of corporate profits, in that, among other things, *each successive Company Defendant would not have been created and, therefore would not have been capable of perpetrating its own forms of fraud against Standard,* if income from each earlier fraud against Standard had not been used to underwrite and operate each successive new company involved in the enterprise, causing Standard to pay each successive member of the enterprise excessive and unnecessary amounts for the various services that Company Defendant purported to provide to Standard. Standard's injuries, therefore, constituted a reasonably foreseeable or a natural consequence of such use or investment of income.

(D.I. 72 at ¶ 180) (emphasis supplied).

The Court recognizes that Standard has alleged that investment of racketeering in-

---

**15.** Under Section 1962(a), it is "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate of foreign commerce."

come was a "substantial factor" in causing some of its injuries because, according to Standard, said income was used to create new enterprise member companies that in turn defrauded Standard by "causing Standard to pay each successive member of the enterprise excessive and unnecessary amounts for the various services that Company Defendant purported to provide to Standard." At the same time, however, the averments underlying Standard's section 1962(a) claim also clearly indicate that these newly-formed, racketeering income funded enterprise members would not have injured Standard, i.e., investment of racketeering income would not have caused plaintiff injury, *unless these defendant companies had perpetrated additional fraudulent racketeering acts against Standard.*

■ As discussed above, a plaintiff "who allege[s] injury resulting from defendants' fraudulent business practices ha[s] not pled a valid section 1962(a) claim." *Glessner v. Kenny,* 952 F.2d 702, 710 (3rd Cir.1991); *see also Teti v. U.S. Healthcare, Inc.,* 1989 W.L. 143274, at *1 (E.D.Pa. Nov. 21, 1989) ("The fact that plaintiffs appear to claim that the fraud allegedly perpetrated on them would not have occurred without the investment of funds from earlier racketeering activities does not change the fact that their alleged injury stems from the alleged fraudulent representations, and not from the investment of funds by the defendants."), *quoted with approval in Glessner v. Kenny,* 952 F.2d at 709. The Third Circuit has further indicated that section 1962(c), rather than section 1962(a), "is the proper avenue to redress injuries caused by the racketeering acts themselves." *Brittingham,* 943 F.2d at 305.

Although it appears that investment of racketeering income played a role in some of Standard's injuries in that it allegedly was a factor in Defendants' perpetration of additional racketeering acts of fraud against plaintiff, the Amended Complaint nonetheless indicates that "[t]he direct cause of [Standard's] alleged injuries was the fraudulent conduct." *Id.* In the case at bar, the

mere investment of racketeering income into the new enterprise members would not have resulted in financial injury to Standard unless these entities were utilized by the enterprise to perpetrate new frauds against plaintiff. Because the Amended Complaint indicates that Standard's injuries were caused by the alleged racketeering acts themselves, rather than by the mere investment of racketeering income into the enterprise, section 1962(c), not section 1962(a), is the "proper avenue to redress [Standard's alleged] injuries...." *Id.*

For the foregoing reasons, the Court will dismiss Standard's section 1962(a) claims.

**F. RICO Section 1962(b): Injury Resulting from Acquisition or Maintenance of an Enterprise through a Pattern of Racketeering Activity**

■ Defendants contend that "[s]ince the [Amended] Complaint is fatally deficient in failing to plead injuries caused by Defendants' 'acquisition or maintenance' of the enterprise, Count IV [of the Amended Complaint] fails to state a claim under § 1962(b) [16]." (D.I. 22 at 25)

The Third Circuit has opined that to state a claim "under § 1962(b), a plaintiff must allege a specific nexus between control of a named enterprise and the alleged racketeering activity." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3d Cir.1991) (citing *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1168 n. 2 (3d Cir.1989)). This requirement is analogous to the section 1962(a) requirement to the same effect, which the Court discussed in the foregoing section.

■ The Court interprets the above-quoted language from the Third Circuit's opinion in *Kehr Packages* as requiring a plaintiff claiming a section 1962(b) violation to show that his alleged injury resulted not from underlying racketeering acts committed by the RICO enterprise, which are redressable under section 1962(c), but from the defendant's acquisition or maintenance of an inter-

---

**16.** Under section 1962(b), it is "unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

est in or control over the enterprise. Other courts considering this issue have reached a similar conclusion. *See, e.g., Danielsen v. Burnside–Ott Aviation Training Center, Inc.,* 941 F.2d 1220, 1231 (D.C.Cir.1991); *O & G Carriers, Inc. v. Smith,* 799 F.Supp. 1528, 1543 (S.D.N.Y.1992); *Casper v. Paine Webber Group, Inc.,* 787 F.Supp. 1480, 1494–95 (D.N.J.1992); *U.S. Concord, Inc. v. Harris Graphics Corp.,* 757 F.Supp. 1053, 1060 (N.D.Cal.1991). Thus, where a plaintiff's alleged injury results only from the predicate racketeering acts themselves, and not from the defendant's acquisition or control of an interest in the enterprise through a pattern of racketeering, a section 1962(b) claim cannot be sustained. *See, e.g., Heaney v. Associated Bank, N.A.,* 88–C–913, 1990 WL 446707, 1990 U.S.Dist. LEXIS 17317 (E.D.Wis. July 11, 1990) ("Similar to § 1962(a), in order to allege injury by reason of § 1962(b), a RICO plaintiff must demonstrate that the defendant's acquisition or control of an enterprise injured plaintiff ... [I]njury from the racketeering acts themselves is not sufficient; rather, a plaintiff must plead facts tending to show that the acquisition or control of an interest injured plaintiff."). It appears that section 1962(c), rather than section 1962(a) or (b), "is the proper avenue to redress injuries caused by the racketeering acts themselves." *See Brittingham,* 943 F.2d at 305. If this were not the case, then the distinction between a section 1962(b) claim and a section 1962(c) would be obscured. *See Danielsen,* 941 F.2d at 1230–31; *Glessner,* 952 F.2d at 709.

█ In the instant case, plaintiff's section 1962(b) claim, according to the Amended Complaint, is grounded on the following allegation:

Defendants' acquisition or maintenance of an interest in or control over the enterprise constituted a substantial factor in the sequence of responsible causation of injuries to Standard's business or property, over a 15–year period, in that, among other things, *each of the Company Defendants was enabled to defraud and injure Stan-*

*dard solely by having been acquired by or brought under the control of one or more of the other defendants.* Moreover, *Standard* would have refused to accept services from, and thus would not have been defrauded and injured by, any of the defendants, if it had been informed of the true facts with respect to the ownership and control of each of the Company Defendants. Standard's injuries, therefore, constituted a reasonably foreseeable or a natural consequence of such acquisition or maintenance of an interest or control.

(D.I. 72 at ¶ 184) (emphasis supplied). This allegation, like Standard's pleading in support of its section 1962(a) claim, indicates that plaintiff seeks to recover damages under section 1962(b) for injuries allegedly resulting from predicate racketeering acts of fraud. Although Standard clearly has alleged that Defendants' acquisition and control of enterprise members allowed the enterprise to further injure plaintiff through additional fraudulent activities, the Court finds that injuries resulting from said underlying racketeering acts cannot serve as a basis for section 1962(b) liability. Rather, these injuries are properly redressed under section 1962(c). "To analyze [Standard's] failure in this count at any great length would be redundant to [the Court's] analysis of the failure of [Standard's section 1962(a) claims]." *Danielsen,* 941 F.2d at 1231.

For the reasons stated, the Court will dismiss Standard's RICO section 1962(b) claims.

## G. RICO Section 1962(c): Liability for Conducting an Enterprise's Affairs through a Pattern of Racketeering

Under section 1962(c), it is unlawful for any "person" [17] employed by or associated with any "enterprise" from conducting or participating in the "conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Defendants seek dismissal of Standard's section 1962(c) claims because, according to defendants, plaintiff failed to satisfy the so-called "distinctiveness" requirement, first enunciat-

---

17. "Person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(4).

ed by the Third Circuit in *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–34 (3d Cir.1984), whereby the "person" charged with a section 1962(c) violation, i.e., conducting or participating in the affairs of an enterprise through a pattern of racketeering, must be distinct from the "enterprise" which associated with or employed the defendant "person".

The *Enright* distinctiveness requirement originates both from the language of the statute·itself as well as from sound interpretation of legislative purpose. First, "the plain language of [section 1962(c)] provides that the person must be 'employed by or associated with'—and therefore separate from—the enterprise...." *Brittingham*, 943 F.2d at 300 (citing *B.F. Hirsch*, 751 F.2d at 633–34). Second, as the court stated in *Enright*,

> [o]ne of the Congressional purposes in enacting RICO was to prevent the takeover of legitimate businesses by criminals and corrupt organizations. It is in keeping with that Congressional scheme to orient section 1962(c) toward punishing the infiltrating criminals rather than the legitimate corporation which might be an innocent victim of the racketeering activity in some circumstances.

751 F.2d at 633–34. Likewise; the Third Circuit has noted that "section 1962(c) was intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'persons,' and either drained of its own money or used as a passive tool to extract money from third parties." *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1359 (3d Cir. 1987). Consistent with this legislative purpose, the Third Circuit extended the *Enright* distinctiveness rule and held that a "corporate 'enterprise' cannot be held vicariously liable for the § 1962(c) violations of its employees, either for aiding and abetting, or under a theory of respondeat superior." *Brittingham*, 943 F.2d at 300 (construing *Petro–Tech, Inc. v. Western Co. of North America, supra*).

In *Brittingham*, the court "clarified the law in this circuit as to the status of claims under section 1962(c) that allege an association in fact among a corporation and its employees, agents, and affiliated entities." *Glessner*, 952 F.2d at 710. The *Brittingham* court explained as follows regarding the distinctiveness requirement:

> [A] § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. A corporation must always act through its employees and agents, and any corporate act will be accomplished through an "association" of the individuals or entities. Consequently, the *Enright* rule would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf.

943 F.2d at 301.

The plaintiffs in *Brittingham* "sued Mobil and Mobil Chemical, rather than the individuals who may have committed the alleged fraud on behalf of these corporations." *Id.* at 300. The court affirmed the district court's dismissal of the plaintiffs' section 1962(c) claims on summary judgment, finding that the advertising agencies, which together with the corporate defendants constituted the alleged association in fact enterprise, "did no more than conduct the normal affairs of the defendant corporations." *Id.* at 303. The court rejected the plaintiffs' section 1962(c) claims against Mobil and its subsidiary because, *inter alia*, the alleged association in fact enterprise was no "more than an association of individuals or entities conducting the normal affairs of a defendant corporation." *See id.* at 301–303. The court indicated that to allow such a claim would "circumvent" the distinctiveness requirement and potentially result in a corporation improperly being·held vicariously liable for the racketeering acts of its employees, agents, affiliates or others acting on its behalf. *See id.* It should be noted that *Brittingham*, as well as *Glessner*, in sharp contrast to the allegations at bar, merely involved "an alleged marketing fraud in which the corporations ... had no separate active roles in the alleged racketeering activity apart from the actions of their agents and affiliates that also comprise part of [the]

plaintiffs' alleged 'association in fact.'" *Glessner,* 952 F.2d at 712–13.

Defendants submitted two letter-briefs bringing *Brittingham* and *Glessner* to this Court's attention and setting forth their arguments for dismissal of Standard's section 1962(c) claims on the basis of these obviously controlling authorities. The following excerpt from Defendants' second letter-brief essentially summarizes ·their position:

> Plaintiff herein pleads that which *Glessner* and *Brittingham* prohibit—an association of companies with their several officers, affiliates or subsidiaries—and seeks to hold these same enterprise members liable as the "persons" who conducted the enterprise's affairs through alleged racketeering acts. *See* Complaint ¶ 166 (pleads association in fact of all Defendants). Plaintiff repeatedly alleges throughout the complaint that the interrelated company defendants/enterprise members were "acting in concert with" the individual defendant/enterprise members who were officers of employees of the companies. Under *Glessner* and *Brittingham,* Plaintiff would be holding the enterprise liable for conducting the enterprise's affairs, which is not permitted under § 1962(c).

(D.I. 101 at 3)

■ Contrary to Defendants' argument, the issue at bar, in this Court's view, is not whether the "persons" charged in the Amended Complaint with section 1962(c) violations *collectively* are non-distinct from the alleged association in fact enterprise composed of those same individuals and entities.[18] Rather, the question here is whether

a *particular* "person" sued under section 1962(c) is distinctive from the "enterprise."[19] When the issue is framed properly in this manner, it becomes clear that *each* of the individual defendants and *each* of the Company Defendants is singularly distinct from the alleged association-in-fact enterprise collectively composed of these individuals and entities.[20]

According to the Amended Complaint, MS and AS, two of the three individual defendants, own common stock, including some majority interests, in at least three, but not all, of the nine closely-held corporations named as party defendants. Plaintiff avers that other Company Defendants, including Dover and Delaware Rental are owned by other Defendants. The alleged association-in-fact enterprise, however, includes at least one company, Mantas Painting, which is owned by individual defendant George Mantas and which, according to the Amended Complaint, is not affiliated with any of the other company or individual defendants. Furthermore, it is significant to note that individual defendants AS and MS did not merely act as officers or employees of enterprise members, but instead acted in their dual roles as Standard employees and enterprise associates. Therefore, the association-in-fact enterprise, as plead in the Amended Complaint, is distinct from any of the particular company or individual defendants. In other words, the alleged enterprise does not "consist[ ] of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf", *Brittingham,* 943 F.2d at 301. Likewise, the association-

---

18. If this were the question raised here, then it would be resolved against Standard because plaintiff clearly alleges in its Amended Complaint that ·"the association in fact of all defendants constitutes [the RICO] 'enterprise,'" D.I. 72 at ¶ 173, and further alleges that all "defendants are jointly and severally liable" for their alleged section 1962(c) violations, D.I. 72 at ¶ 177.

19. Both *Brittingham, see* 943 F.2d at 301–302, and *Glessner, see* 952 F.2d at 713, indicate that the distinctiveness requirement should be analyzed in this manner. In *Brittingham,* for instance, the court's opinion includes the following statements which appear to be relevant here: (1) "§ 1962(c) violation requires a finding that *the defendant 'person'* conducted or participated in

the affairs of an enterprise through a pattern of racketeering", 943 F.2d at 300; (2) "distinctiveness concerns are generally not present when *an individual defendant* is also part of an association-in-fact that constitutes the enterprise," *id.* at 302; and (3) "when *a defendant is itself a collective entity,* it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute *the defendant*", *id.*

20. According to Defendants' own brief, "Standard pleads· an 'association in fact' of two individuals, [AS] and [MS], and certain corporations *some of which AS and MS had some interest in and some of which they did not.*" (D.I. 22 at 2) (emphasis supplied)

in-fact, as averred in the Amended Complaint, is not "merely [a] combination[ ] of individuals or entities affiliated with a defendant corporation", *id.* Indeed, there is no single entity or corporate defendant that is non-distinct from the alleged association-in-fact enterprise. A contrary conclusion here would quite inappropriately "permit individuals to escape the reach of RICO through the simple artifice of incorporating", *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 n. 7 (8th Cir.1989) (*cited with approval in Brittingham*, 943 F.2d at 301–302).

■■■ There are additional grounds upon which the Court finds that Defendants' position should be rejected. As discussed above, the *Enright* distinctiveness rule arises, at least in part, from the notion that "RICO sanctions [should be] directed at the persons who conduct the racketeering activity, rather than the enterprise through which the activity is conducted." *Brittingham*, 943 F.2d at 301. This ensures that a corporate defendant also named as the enterprise will not be held vicariously liable for the actions of its employees. *See id.* at 302; *B.F. Hirsch*, 751 F.2d at 633–34. The Court is convinced that allowing Standard to proceed with its section 1962(c) claims, against either the individual defendants or the Company Defendants, will not result in any "innocent" victim corporations being held vicariously liable for the racketeering acts of others. The Court is of the view that the result reached herein comports with the principle that federal courts should "orient section 1962(c) toward punishing the infiltrating criminals rather than the legitimate corporation which might be an innocent victim of the racketeering activity. . . ." *B.F. Hirsch*, 751 F.2d at 634. Indeed, for reasons discussed below, it appears that the Company Defendants will be liable, if at all, for their own racketeering activities rather than being vicariously liable for the unlawful acts of their employees, agents or affiliates.

Even assuming that this case involved an association-in-fact enterprise which is nothing more than an association of individuals and entities conducting the affairs of a defendant corporation, which certainly is not the case here, the following passage from the Third Circuit's recent opinion in *Brittingham*, 943 F.2d at 302, nonetheless illustrates why section 1962(c) arguably is a proper theory of liability in the instant case, at least as to the *individual* defendants:

> [I]individual defendants, in contrast to collective entities, are generally distinct from the enterprise through which they act. Unlike a collective entity, it is unlikely that an individual by himself would constitute a valid enterprise. *Cf. United States v. Benny*, 786 F.2d 1410, 1415–16 (9th Cir.) (sole proprietorship with four employees is distinct from defendant owner), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). Thus, distinctiveness concerns are generally not present when an individual defendant is also part of an association-in-fact that constitutes the enterprise. *See, e.g., Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989) (upholding [section 1962(c) ] claims where individual defendants were named as part of association-in-fact enterprise); *United States v. Perholtz*, 842 F.2d 343, 353–54 (D.C.Cir.) (same), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

In the instant case, the Amended Complaint clearly alleges that AS and MS, who are named as defendant "persons" for section 1962(c) purposes, were associated with or employed by various component-members of the association-in-fact-enterprise and that they conducted the enterprise's affairs through a pattern of racketeering. Furthermore, as Standard has appropriately argued, the fraudulent actions of AS and MS were not performed solely in their capacity as enterprise employees "conduct[ing] the normal affairs of the defendant corporations", *Brittingham*, 943 F.2d at 303. Instead, AS and MS committed fraudulent acts in their dual roles both as enterprise members and as Standard employees. Whether some or all of the defendant companies with which AS and MS associated were legitimate businesses that were infiltrated and thereby victimized by these individuals, and whether AS and MS used said corporate members for their own benefit, are factual issues which the Amended Complaint does not clearly re-

solve and which the Court will not consider at this stage of the proceedings. *See Glessner*, 952 F.2d at 713.[21] Clearly, legitimate corporations will not be made liable for the racketeering acts of AS and MS by allowing this claim to go forward as to these two individual defendants. Accordingly, Defendants' contention that Standard's section 1962(c) claims should be dismissed on grounds of non-identity appears to be without merit, at least with respect to the individual named defendants, i.e., AS and MS.

There is authority which indicates also that even the corporate defendants named in Standard's Amended Complaint may be liable under section 1962(c), even if it were assumed that the alleged association-in-fact enterprise was a mere combination of employees, agents and affiliates acting on behalf of a defendant corporation. The Third Circuit has held that "[w]ithout allegations or evidence that the defendant corporation had a role in the racketeering activity that was distinct from the undertakings of those acting on its behalf, the distinctiveness requirement is not satisfied." *Brittingham*, 943 F.2d at 302. "*Brittingham* requires [Standard's] complaint to allege that the corporate defendants have played some distinct and active role in the alleged racketeering activity apart from the actions of their employees, affiliates, and agents if they are jointly to be regarded as an association in fact." As the court held in *Petro–Tech, Inc.*, 824 F.2d at 1361, where the corporate defendant "is alleged to have attempted to benefit from its employees' activity, it is appropriate to allow the victims of that activity to recover."

Standard properly contends that in the case at bar, section 1962(c) is an appropriate theory of liability as to some if not all of the named corporate defendants since it is alleged in the Complaint (and the Amended Complaint) that these entities, in addition to being members of the association-in-fact enterprise, played an active and distinct role in the alleged racketeering activity apart from the actions of their employees, affiliates and agents. (See, e.g., D.I. 1 at ¶¶ 54–58, 67–68, 73, 84) Additionally, there are allegations in the Amended Complaint indicating that at least some of these entities sought to benefit from the racketeering activities of their employees and directors. Since Defendants have not even attempted to address these issues, and since the Court is unwilling to sift through the averments of Standard's lengthy Amended Complaint to determine which, if any, corporate defendants cannot be liable under section 1962(c) on the ground that they did not play an active and distinct role in the alleged racketeering activity apart from the actions of their employees, affiliates and agents, the Court will deny defendants' motion to dismiss Standard's section 1962(c) claims.

## H. RICO Section 1962(d): Liability for Conspiring to Violate RICO Sections 1962(a), (b) and (c)

Defendants' only argument in favor of dismissal of Standard's section 1962(d) claim is that such a claim cannot be sustained in the absence of a viable claim under sections 1962(a), (b) or (c). (D.I. 22 at 29)[22] Since

21. In *Glessner*, the Third Circuit rejected a similar contention, namely, that the individual party-defendants to that action might be distinct from the alleged association in fact enterprise, based on its finding, *inter alia*, that the individual defendants' "activity [was] indistinguishable from that alleged as to the corporations...." 952 F.2d at 713–714. This case is readily distinguished from the action at bar in that here the various company defendants and the various individual defendants are alleged to have carried out racketeering acts which are distinguishable from the actions of the other defendants. In other words, each of the defendants here, whether individuals or corporate entities, allegedly performed a role distinct and apart from the acts committed by others. Furthermore, it is alleged that company defendants and individual defen-

dants alike benefitted themselves from the racketeering scheme.

22. Defendants have attempted to set forth a new argument supporting dismissal of this claim in a letter brief submitted to the Court on or around February 24, 1992. Specifically, defendants contend that Standard failed to satisfy the pleading requirements *purportedly* set forth by the Third Circuit in *Glessner*, 952 F.2d at 714. However, the passage quoted by defendants in their letter brief at page 9 in fact is a quotation originally from *Shearin*, 885 F.2d at 1166, a case which was already reported when defendants moved to dismiss the Complaint and which defendants in fact relied upon in their opening brief, although not in this context. Defendants' failure to raise this contention in their opening brief is a viola-

the Court has determined that Standard's claims under section 1962(c) cannot be dismissed at this time, Defendants' motion to dismiss Standard's section 1962(d) claim must be denied.

### I. Dismissal of Standard's RICO Claims Against Defendants AMB, SS & H Realty, SHS Holding, and All–American for Failure to Allege a Pattern of Racketeering Activity on the Part of these Defendants

■ Defendants contend that dismissal from this action is proper as to a number of the Company Defendants on the ground that "the [Amended] Complaint fails to allege sufficient predicate RICO acts, or even mention any actionable conduct whatsoever, on the part of AMB, SS & H Realty, SHS Holding Corp. and All–American Productions, Inc." (D.I. 22 at 30) In support of this contention, Defendants correctly posit that "[t]o state a RICO claim against a defendant, the Complaint must plead at least two predicate acts of racketeering activities by that defendant, which amount to a 'pattern' of racketeering activity." (D.I. 22 at 30) (citing 18 U.S.C. § 1962(c); *Jordan v. Berman*, 758 F.Supp. 269, n. 2 (E.D.Pa.1991); *Cemar v. Nissan Motor Corp.*, Civ. No. 87–165–CMW, at 4, 1990 W.L. 3038 (D.Del.1990)). This pleading requirement, however, applies only to RICO claims brought under subsections (a), (b) and (c) of section 1962, and do not apply to section 1962(d) claims. Standard's response to this Defendants' argument indicates that plaintiff failed to allege two or more specific acts of racketeering against said defendants. (See D.I. 35 at 48–49) The claims brought against these Company Defendants under section 1962(c) accordingly must be dismissed.

Standard correctly argues, however, that a plaintiff can sustain a section 1962(d) RICO conspiracy claim despite the fact that the defendant did not commit two or more predicate racketeering acts. (D.I. 35 at 45–48) The following excerpt from the Third Circuit's opinion in *Shearin*, 885 F.2d at 1169, supports Standard's argument:

> Predicate acts for [RICO] conspiracy do not of necessity consist of section 1961(1) racketeering activity. To the contrary, a conspiracy to commit the other RICO violations may occur absent the actual commission of the other violations or the racketeering activities that underpin them. All that need be shown is that the conspirators agreed to engage in a pattern of racketeering activity. *See United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir.1982). Acts that further a section 1962(d) conspiracy thus may cause harm even when they do not themselves qualify as racketeering activity. Taking into account all the provisions of section 1962, either racketeering activity or classic overt conspiracy acts may qualify as "predicate acts" to a RICO violation that causes injury.

Defendants have not sought dismissal of Standard's RICO conspiracy claims on any grounds other than the failure to state claims under sections 1962(a), (b) and (c). *See supra* at note 10.

Because these Company Defendants may have committed "classic overt conspiracy acts", which may qualify as underlying predicate acts to a section 1962(d) violation, and because Defendants have not contended nor demonstrated that Standard did not allege sufficient predicate acts of conspiracy as to these parties, dismissal of Standard's section 1962(d) claims against these Company Defendants will not be granted at this time.

### J. Standard's Punitive Damages Claims

■ Defendants contend that Standard's demand for punitive damages must be stricken because, according to Defendants, punitive damages cannot be collected under RICO since the statute specifically provides for treble damages. At least one court in this Circuit has so held. *See Moravian Dev. Corp. v. Dow Chemical Co.*, 651 F.Supp. 144, 149–50 (E.D.Pa.1986). The Court agrees that punitive damages are not proper under RICO since the Act already provides for

---

tion of this Court's Local Rule 7.1.2(c)(2). The Court, therefore, will not consider this argument

in resolving Defendants' motion to dismiss.

treble damages. *See id.* However, Standard's Amended Complaint includes a number of state law claims, including claims for common law fraud and willful breach of fiduciary duty, to which punitive damages may properly be appended. *See Kranzdorf v. Green,* 582 F.Supp. 335, 338 (E.D.Pa.1983). Defendants do not contend that punitive damages cannot be recovered under these state law claims. Accordingly, the Court rejects Defendants' contention that Standard's punitive damages demand must be stricken.

### K. Dismissal of Standard's State law Claims for Lack of Subject Matter jurisdiction

Defendants seek dismissal of Standard's state law claims on the ground that the Court should not exercise its discretionary pendent jurisdiction over these claims unless Standard's RICO claims can withstand Defendants' motion to dismiss. Because the Court already has determined that some of Standard's RICO claims cannot be dismissed, at least not at this early stage of the proceedings and on the record as it stands today, the Court will retain jurisdiction over Standard's state law claims for the time being.

### L. Whether Standard's Negligence Claim is Barred by the Principle of Claims Preclusion

 Standard seeks damages from Dover which allegedly resulted from Dover's negligent repair of one of Standard's chemical storage tanks, i.e., "Tank 404". Defendants contend that this claim is barred by principles of *res judicata* because, according to Defendants, Standard brought a Delaware state court action seeking damages from Dover in connection with the same repair incident.

The parties cite arguably conflicting authorities on the issue of whether the Court is permitted to take judicial notice of the prior state court proceedings, which are not mentioned in Standard's pleadings, when ruling on a motion to dismiss. Defendants contend that the Court may take judicial notice of the prior action despite the fact that Standard's pleadings, which of course must be taken as true, do not contain any indication of this prior state court proceeding. (D.I. 22 at 38 (citing, *inter alia, Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 n. 3 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L:Ed.2d 532 (1988)). Standard contends, however, that a motion to dismiss grounded on *res judicata* can be granted only if the existence of this affirmative defense appears on the face of the complaint. (D.I. 35 at 56 n. 41 (citing authorities)) The Court finds it unnecessary to resolve this question at the present time, for the reasons discussed below.

Standard contends that *res judicata* does not apply here because Dover obtained the prior favorable court judgment by fraudulently concealing from Standard facts indicating that Dover performed the negligent repairs on Tank 404. (D.I. 35 at 56 (citing *Restatement (Second) of Judgments* § 70, comment d (1982)) Since defendants concede, consistent with Standard's version of the facts, that the state court dismissed Standard's case against Dover because Standard was unable to prove that Dover had performed any repairs on Tank 404, and because the Amended Complaint clearly alleges that Dover fraudulently concealed the fact that it had actually performed repairs on Tank 404, the Court will not grant Defendants' motion to dismiss Standard's negligence claim on *res judicata* grounds.

### M. Standard's Claim Against MS for Breach of Fiduciary Duty

 Defendants contend that "a mere employee does not ordinarily occupy a position of trust and confidence toward his employer." (D.I. 22 at 40 (citing *Brophy v. Cities Service Co.,* 31 Del.Ch. 241, 70 A.2d 5, 7 (1949)) Defendants further posit that a "fiduciary duty is rarely owned by an employee and only arises in special circumstances of trust and confidence." (D.I. 22 at 40 (citing cases)) Similarly, Defendants assert that for an employee "to rise to the level of a fiduciary, the employee must be given confidential information *by the employer* . . . which the employee then uses for his own benefit." (D.I. 22 at 40 (emphasis in original)) Defendants conclude that since MS

was "only a maintenance employee of Standard", and since it is not alleged by Standard that he received any confidential information from Standard which MS used for his own benefit, plaintiff's claim against MS for breach of fiduciary duty should be dismissed.

As an initial matter, it must be stated that Defendants' characterization of MS as "only a maintenance employee" misconstrues the averments of the Amended Complaint as to MS's actual level of responsibility and discretion while he was employed by Standard as a Plant Engineer and Manager of the Plant's Maintenance Department. Furthermore, Defendants have construed Delaware law too narrowly on the issue of when an employee can be liable for breach of a fiduciary duty.

In *Brophy*, 70 A.2d at 7, the court held that a "mere employee, *[who is] not an agent with respect to the matter under consideration,* does not ordinarily occupy a position of trust and confidence toward his employer." (Emphasis supplied) The court also held that an employee may be liable to his employer for "breach of a confidential relation" because "[p]ublic policy will not permit an employee occupying a position of trust and confidence toward his employer to abuse that relation to his own profit...." *Id.* at 8.

Standard contends that MS acted—not as a mere employee—but as an agent for Standard when he dealt with outside companies such as Dover and Mantas Painting. Standard also contends that whether an employee owes a fiduciary duty to his employer turns on the application of the law of agency and trust to the particular facts as well as to the employee's particular duties, responsibilities and actions. *Cf. Science Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 964 (Del.1980) (Delaware law of corporate opportunity involves application of agency fiduciary law to a specific corporate fact scenario and "sets the parameters of permissible employee conduct consistent with an employee's fiduciary duties to his employer of loyalty and fair dealing"). Although the Court is not prepared to resolve here the factual questions of whether MS was an agent or employee of Standard when he allegedly engaged in the fraudulent activities detailed in the Amended Complaint, or whether MS owed

and breached any fiduciary duties of loyalty and fair dealing to Standard, it appears from Standard's allegations that MS arguably acted as an agent for Standard rather than as a mere employee in these transactions. Accordingly, Defendants' motion to dismiss this claim will be denied.

### N. Standard's Demands for Unjust Enrichment, Constructive Trust and an Accounting

Defendants move for dismissal of Standard's unjust enrichment claims as well as its demands for the equitable remedies of constructive trust and an accounting. As to Standard's request for imposition of a constructive trust, Defendants argue that this remedy is only "used to recover specific, identifiable property which rightfully belongs to the plaintiff, but is in the possession of the defendant; thus, the defendant is deemed to hold the property in trust for the plaintiff." (D.I. 22 at 41–42 (emphasis in original) (citing *Woodock v. Neel,* Civ. Action. No. 11409, 1990 WL 154142, 1990 Del.Ch. LEXIS 165 (Del.Ch. Sept. 26, 1990)) Defendants further contend that the constructive trust remedy is not available in cases where the plaintiff seeks to recover money damages alone.

Defendants' interpretation of Delaware caselaw on the equitable remedy of constructive trust is not entirely accurate. Although a constructive trust typically is imposed when the defendant wrongfully obtained specific property or identifiable proceeds of specific property from the plaintiff, this equitable remedy also can be applied to the recovery of money when the right asserted by the plaintiff is distinctly equitable in nature, including a right arising from breach of a fiduciary duty. *See McMahon v. New Castle Associates,* 532 A.2d 601, 608–609 (Del.Ch.1987).

Standard alleges that "AS and MS used their positions of trust and confidence [with respect to Standard], as well as confidential business information and other property of Standard, in order to induce Standard to enter into numerous contracts with and pay substantial sums of money to the Company Defendants and others." (D.I. 72 at

¶ 209) Hence, Standard's constructive trust demand seeks money damages which arise from alleged violations of a right that arguably is distinctly equitable in nature. Thus, consistent with the foregoing finding that Standard should be permitted to go forward with its claims for breach of fiduciary duty, the Court will deny Defendants' motion to dismiss Standard's constructive trust claims.

As to Standard's demand for an accounting of all profits obtained by Defendants and Mantas Defendants in connection with AS's and MS's alleged abuse of their fiduciary duty to Standard, Defendants' move for dismissal on the ground that an "accounting is not an available remedy in commercial disputes between non-fiduciaries." (D.I. 22 at 43) Defendants contend also that since Standard's "only possible claims against defendants arise from contract," Standard is not entitled to an accounting remedy under Delaware law.

Defendants' position must fail because (1) this case is not merely a "commercial[ ] dispute between non-fiduciaries"; (2) it is not true that Standard's "only possible claims against defendants arise from contract"; (3) Standard asserts that AS and MS "owed a fiduciary duty to Standard" and that Defendants wrongfully obtained "secret profits" at plaintiff's expense as a result of the Sinibaldi brothers' alleged breach of their fiduciary duty; and (4) the Court can compel an accounting where a fiduciary relationship exists between the parties. *See Ibach v. Dolle's Candyland, Inc.*, Civ. Action no. 1425, 1991 WL 9980, \*10, 1991 Del. Ch. LEXIS 12, \*26– \*27 (Del.Ch.1991).

Defendants offer two arguments in support of their position that Standard's unjust enrichment claims should be dismissed. First, Defendants contend that Standard's unjust enrichment claim is "a contract claim in disguise" and further contend that "[w]here [a] claim is based on contract, [the] equitable remedy of unjust enrichment is not available." (D.I. 22 at 42) In support of its unjust enrichment claims, Standard alleges that Defendants improperly obtained substantial benefits from Standard by virtue of numerous mistakes of fact on the part of Standard, which, according to Standard's allegations, were knowingly caused by defendants. (See D.I. 72 at ¶ 213) The Amended Complaint indicates, therefore, that plaintiff's unjust enrichment demands are not necessarily "contract claim[s] in disguise." Accordingly, the Court will allow Standard to proceed with its unjust enrichment claim for the time being.

Defendants second argument is that Standard has not alleged, with sufficient particularity, the specific facts underlying its claim that Defendants were unjustly enriched because of Standard's mistake or fraudulently induced payments to Defendants. The Court firmly disagrees. As discussed in some detail above, Standard sets forth with considerable specificity the manner in which Defendants allegedly were unjustly enriched at Standard's expense as a result of Standard's mistaken or fraudulently induced payments to Defendants.

For these reasons, the Court will deny Defendants' motion to dismiss Standard's demands for unjust enrichment, imposition of a constructive trust and an accounting.

### III. Standard's Motion for Entry of a Confidentiality Order

Standard and Defendants are in dispute over the precise terms of an appropriate confidentiality stipulation and order for this case. The issue of confidentiality first arose in this litigation when counsel for the First Complaint defendants contacted plaintiff's counsel in writing and proposed a confidentiality stipulation and order (hereafter "the confidentiality stipulation" or "the stipulation"). (See D.I. 66, Exhibit H) First Complaint defendants' counsel stated in his letter to Standard's counsel that a confidentiality stipulation "is justified under the circumstances of this case." (See D.I. 66, Exhibit H) Unfortunately, the parties since that time have been unable to reach an agreement regarding the precise terms of the stipulation.

Both Standard and Defendants agree in principle that a confidentiality stipulation and order is proper in this case. Although Defendants oppose Standard's instant motion, they have indicated in their answering brief

that they "will agree to limited confidentiality of trade secret, proprietary and [other] confidential information" discovered in this litigation. (D.I. 64, Answering Brief at 3) The parties' disagreement at this point arises primarily from Defendants' efforts to limit the terms of the stipulation and order originally proposed by them. Defendants' opposition to Standard's motion for entry of a confidentiality order is grounded, *inter alia*, on defendants' contention that any confidentiality stipulation or order in this case should contain two provisions proposed by defendants.

First, Defendants seek to modify their proposed confidentiality stipulation such that "[p]leadings, motions and applications filed with the court" which contain discovery information designated as confidential would not be "subject to the confidential treatment provided for [in the confidentiality stipulation]". (See D.I. 62, Exhibit K) Under defendants' proposed stipulation, said "pleadings, motions and applications" would not have to be filed under seal. (See D.I. 62, Exhibit K) This modification would make the confidentiality stipulation worthless and hollow since confidential information discovered in this litigation then could be disclosed simply by including it in a "pleading, motion or application" filed with this Court. Accordingly, the Court rejects defendants' argument that any confidentiality stipulation or order entered in this case must contain such a provision.

Second, Defendants seek to modify their proposed confidentiality stipulation so that "[n]othing in [the stipulation] restricts the use of information related to tax law violations or other inappropriate or fraudulent conduct." (D.I. 62, Exhibit K) Given the course of this litigation thus far and the uncooperative and contentious nature of the parties to this action, the Court predicts that many disputes would arise between the parties as to whether a particular piece of information may be disclosed on the ground that it relates to some form of "inappropriate or fraudulent conduct" on the part of an opposing party. Furthermore, this proposal would render the confidentiality stipulation essentially meaningless since any discovery information designated as confidential could be revealed whenever the would-be disclosing party determines that the information relates to any form of "inappropriate or fraudulent conduct" on the part of another. The Court, therefore, rejects defendants' contention that any confidentiality order entered in this case should include such language.

The remainder of Defendants' argument in opposition to Standard's motion for entry of a confidentiality order primarily concerns issues regarding whether particular information is properly designated as "confidential". It appears to the Court that various types of business and financial information already discovered in this litigation should be given confidential treatment. *See, e.g., Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 890 n. 42 (E.D.Pa.1981). The parties' agreement in principle that a confidentiality stipulation "is justified under the circumstances of this case," (See D.I. 66, Exhibit H), certainly supports this conclusion. It is obvious, however, that not every piece of information discovered in this case is entitled to confidentiality treatment.

■ There are a number of different methods by which the Court can effectively manage this confidentiality dispute. One method is to require a party to move for a protective order each time it believes that confidentiality treatment is appropriate in this action. This approach is extremely inefficient and burdensome to the Court because it will require extensive and repeated judicial intervention. Another method is for the Court to enter an "umbrella" protective order providing a mechanism by which any party may designate discovery matters as confidential under the proper circumstances. This approach would allow for objection to any confidentiality designation and would provide for judicial intervention only if the parties were unable to resolve the matter independently. The Court finds that under all the circumstances of this case, such an "umbrella" confidentiality order would best serve the interests of just, prompt and efficient resolution of this complex action. Accordingly, the Court is inclined to exercise its discretion to enter an "umbrella" protective order by which either party can designate information discovered in this litigation as

confidential under appropriate circumstances.

 Defendants have stated that if the Court decides to enter a confidentiality order in this case, then any such order "should make clear that the burden is on the party seeking confidentiality to file a Motion for a Protective Order which must show good cause for such a designation as required by the Federal Rules of Civil Procedure and the law of this Circuit." (D.I. 64, Answering Brief at 20 (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 655–57 n. 1 (3d Cir.1991)) The Court agrees that such a requirement is proper here.

The protective order proposed by Standard, however, requires the *objecting* party to "apply to the Court for a ruling that the document or testimony shall not be considered 'Confidential.'" (D.I. 62, Exhibit A at 3) The Court finds this procedure to be unacceptable in the instant case. Additionally, the Court finds that under an appropriate confidentiality stipulation and order for this action, a party may designate discovery material as "confidential" "'only upon a good faith belief that the material is entitled to protection under the Federal Rules of Civil Procedure.'" *See Republic of Philippines*, 949 F.2d at 656–57 n. 1. In other words, a party who designates discovery material as confidential without a good-faith basis in fact and law for making such a designation will be in violation of this provision. Standard's proposed "umbrella" protective order contains no language to this effect.

Hence, although Standard's proposed confidentiality order appears to be reasonable and proper in all other respects, Standard's proposed order nonetheless is unacceptable since it does not include these provisions. Accordingly, the Court will deny Standard's motion without prejudice to renew and will allow the parties an additional opportunity to enter into a confidentiality stipulation and order consistent with this Opinion. If the parties are unable to reach such an agreement within fifteen days after the issuance of this Opinion, then the Court will entertain a renewed motion by Standard for entry of a confidentiality order.[23]

## IV. Motions to Compel Production of Documents

Standard and Defendants both filed motions to compel document production by the other. The record indicates that document production and other discovery in this case is at an impasse, largely because of the parties' failure to cooperate and engage in proper discovery procedures—without judicial intervention.

### A. Standard's Motion to Compel

Standard moves to compel Defendants' compliance with its document production requests on the ground that its requests concern relevant matters and are within the permissible scope of discovery. In addition, Standard asserts that Defendants improperly conditioned their compliance with plaintiff's document requests on Standard's "good faith production of documents responsive to [Defendants'] requests." (D.I. 69, Exhibit D)

Standard sufficiently detailed the relevance of its various document requests and demonstrated to this Court's satisfaction that these requests are well within the permissible scope of discovery. (See D.I. 69 at 3–5) Significantly, Defendants have not suggested in their motion papers nor at oral argument on this matter that Standard's motion to compel should be denied on relevancy grounds or on other grounds related to the proper scope of discovery. (See D.I. 67; D.I. 70; D.I. 79 at 61–75)

Rather, Defendants have steadfastly maintained, both during discovery negotiations and in their motion papers filed with this Court, that they "agree[ ] to produce virtually all documents in their possession *subject to [Standard's] good faith production of the documents requested by Defendants.*" (D.I. 70 at 5 (emphasis supplied)) Other than this misplaced conditional offer to comply with Standard's discovery requests, which obviously does not provide a sound legal basis for opposing Standard's motion to compel, and

---

**23.** Obviously the Court would be inclined to grant such a motion if the proposed protective order accompanying the motion contains the two requirements discussed here.

the blanket objections Defendants initially made in their response to Standard's request for production of documents, Defendants offered no other justification for their refusal to comply with Standard's reasonable discovery requests. (See D.I. 70 at 5)

Since Standard's document requests seek to discover clearly relevant matters, and since Defendants offer no sound legal basis for their non-compliance with Standard's document requests or for denial of Standard's motion to compel, the Court will grant Standard's motion.

## B. Defendants' Motion to Compel

■ Standard has represented to the Court that it is willing to comply substantially with Defendants' document requests. (D.I. 79 at 62; D.I. 68 at 3) As to thirteen particular document requests, however, Standard vigorously objects to production because, according to Standard, "they are extremely broad and burdensome and are not justified under the [federal] rules [of Civil Procedure]." (D.I. 68 at 4) Because Standard agrees to comply with many of Defendants' discovery demands, the Court will grant in part, i.e., only as to the document requests other than the thirteen opposed requests, Defendants' motion to compel.

As to the remaining thirteen document requests, the Court agrees with Standard that many of these requests are extremely broad and excessively burdensome, and are not proper even under today's liberal discovery rules. For example, Defendants' document request No. 1 seeks "[a]ll documents relating to any agreements, loans, purchases, sales, transfers, commissions, transactions, contracts, deals, financing or any other professional or business relationship by and between [plaintiff] and [its parent company,] Standard Chlorine Company." (D.I. 68 at 4) Similarly, request No. 26 seeks "[a]ll sales invoices, purchases invoices, or documents

relating to operating expenses of Standard." (D.I. 68 at 5)

Defendants, the parties moving to compel discovery of these documents, have failed to fulfill their burden of showing the permissibility and relevance of these extremely broad discovery requests. Although it is true, as Defendants contend, that Standard's allegations against Defendants are wide-ranging and cover a lengthy period, clearly Defendants' overly-broad document requests are not justified thereby. Accordingly, the Court will deny (without prejudice to renew) Defendants' motion to compel Standard's compliance with their document request Nos. 1, 2, 3, 6, 10, 15, 16, 22, 24, 25, 26, 27 and 28. The Court will thus afford the parties an additional opportunity to resolve, without judicial intervention, the proper scope of these particular thirteen document requests.

## V. Defendants', George Mantakounis and Mantas Painting, Motion to Dismiss Standard's Amended Complaint

Defendants, George Mantakounis and Mantas Painting (collectively referred to herein as "the Mantas Defendants"), move to dismiss the Amended Complaint as to them on the following grounds: (1) Standard violated this Court's Rule 16 Scheduling Order in connection with its joinder of the Mantas defendants to this action with the filing of its Amended Complaint on May 29, 1992; (2) Standard failed to comply with Rule 15(a) in its efforts to add the Mantas Defendants as party-defendants to this case; (3) lack of subject matter jurisdiction; (4) lack of personal jurisdiction; (5) failure to join an indispensable party under Rule 12(b)(7), (6) the Amended complaint is "vague and ambiguous" entitling the Mantas Defendants to a more definite statement under rule 12(e); and (7) the Amended Complaint fails to state a claim upon which relief can be granted against George Mantakounis.[24]

---

24. The Mantas defendants further request "that the Court ... award reasonable attorneys fees and costs for the preparation of the Motion to Dismiss, this Brief, and any arguments scheduled by the Court on same...." (D.I. 86 at 45; D.I. 84 at 48) The Mantas defendants present no authority or grounds whatsoever for this extraordinary relief. It is curious that such a request

was made because, as the Court will discuss herein, many, if not all, of the Mantas defendants' contentions and assertions raised at bar are meritless or, arguably, even frivolous. Clearly the request for attorneys fees, without even attempting to assert a basis in law or fact for this relief, is frivolous. This request accordingly is denied. Although it does not appear that Stan-

The Court's Rule 16 Scheduling Order in this case required that all motions to join parties and all motions to amend pleadings be filed prior to May 31, 1992. (D.I. 39) The Order does not address filing of amended pleadings where leave of court is not required. Because Standard filed an Amended Complaint *as a matter of right,* as discussed in greater detail below, a motion for leave of the Court was not required to file its amended pleading. In any case, Standard joined the Mantas Defendants as party defendants to this action with the filing of its Amended Complaint on May 29, 1992, which is prior to the May 31, 1992 deadline for joinder of parties (albeit by motion). For these reasons, and others discussed herein, the Court rejects the Mantas Defendants' contention that Standard violated the Court's Rule 16 Scheduling Order by joining the Mantas Defendants to this action with the filing of its Amended Complaint on May 29, 1992.

Mantas Defendants correctly state that "[u]nder Rule 15 a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." (D.I. 84 at 26)[25] They then assert, however, that since the original Complaint did not name the Mantas Defendants as parties, "no responsive pleading was required as to [them]." (D.I. 84 at 26–27) Mantas Defendants conclude that the portion of Rule 15 giving a party the right to amend its pleading as a matter of right any time prior to the filing of a responsive pleading is, therefore, "of no avail to the Plaintiff." (D.I. 84 at 27)

 Standard responds that it was permitted under Rule 15(a) to file an amended pleading on May 29, 1992 because the only response to the original Complaint was a motion to dismiss. (D.I. 88 at 8) It is settled that a motion to dismiss is not deemed a "responsive pleading" for Rule 15(a) purposes. *See, e.g. Centifanti v. Nix,*

865 F.2d 1422, 1431 n. 9 (3d Cir.1989); *United States v. Montchanin Mills, Inc.,* 512 F.Supp. 1192, 1193 (D.Del.1981). It thus appears that Standard was entitled to file an Amended Complaint as a matter of right and without leave. Whether a plaintiff may be further permitted to add parties in this manner is an issue which this Court has considered and answered in the affirmative. *See Texas Energy Reserve Corp. v. Dept. of Energy,* 535 F.Supp. 615, 620–21 (D.Del.1982), *aff'd,* 710 F.2d 814 (Temp.Emer.Ct.App. 1983); *United States v. Sinclair,* 347 F.Supp. 1129 (D.Del.1972), *appeal dismissed,* 498 F.2d 847 (3d Cir.1974).

 Furthermore, in the instant case, as in the above-cited cases where this Court addressed the issue at hand, even if plaintiff could not properly join the Mantas Defendants in this manner, the Court would exercise its discretion and allow joinder of these parties pursuant to Rule 15. Leave is "freely granted" under the federal rules unless the non-moving party can demonstrate that unfair prejudice will result if the amendment is permitted. *See, e.g., Sturgess v. Negley,* 761 F.Supp. 1089, 1099 (D.Del.1991). Mantas Defendants' suggest that they will be prejudiced by allowing their joinder at this stage of the proceedings because "extensive discovery has taken place: and because the Court's Scheduling Order will force defendants into the difficult "position of having to complete discovery in . . . four weeks." (D.I. 84 at 22) Mantas Defendants' prejudice argument is without merit because most discovery has not yet been completed in this case due to discovery disputes and, in any event, the Court has indicated, and reiterates here, that a new Scheduling Order will be issued after resolution of the motions presently under consideration. Accordingly, Mantas Defendants' contention that Standard failed to comply with Rule 15(a) is without merit.[26]

---

dard has *yet* expended substantial legal resources responding to the Mantas defendants' baseless positions, the Court nonetheless notes these circumstances.

25. The motion papers filed on behalf of Mantakounis and Mantas Painting are, with few exceptions, verbatim copies of one another. Since the briefs filed for Mantakounis include all argu-

ments raised in Mantas Painting's briefs, as well as one additional argument, the Court generally will make docket item references to Mantakounis' briefs only.

26. Mantas defendants' subject matter jurisdiction and personal jurisdiction arguments are based entirely on Standard's purported failure to comply with the Court's Rule 16 Scheduling Order

Mantas Defendants' next argument is that dismissal of the Amended Complaint is required due to Standard's failure to join the estate of Pasquale Romano ("Romano" or "the estate"), which, according to Defendants, is an indispensable party under Rule 19. Mantas Defendants assert that Romano is an indispensable party because Romano, purportedly a "co-conspirator" in the alleged racketeering scheme against Standard, may be jointly liable to Standard together with the other party-defendants. Mantas Defendants' position essentially is that

> (1) in the absence of . . . Romano complete relief cannot be accorded among those already parties to this action . . .; [and] (2) . . . that the disposition of the action without the estate . . . as [a party] [d]efendant herein would impair [Mantas Defendants'] ability to protect [their] interest[s] and would expose [them] . . . to a substantial risk of having to incur additional . . . financial burdens on any [potential] judgment rendered in this matter. In short, the [Mantas Defendants] could possibly be saddled with additional financial obligations which should have been shared in whole or in part by . . . Romano. . . ."

(D.I. 84 at 38–39)

Standard responds that a defendant's right to contribution or indemnity from an absent party who may be jointly liable to the plaintiff does not render the absentee an indispensable party under Rule 19. (D.I. 88 at 14 (citing authorities)) [27] The Court agrees. See, e.g., Gold v. Johns–Man-ville Sales Corp., 723 F.2d 1068, 1076 (3d Cir.1983). The Court thus finds that Romano is not an indispensable party under Rule 19(a) and that Mantas Defendants' motion to dismiss cannot be granted on this ground. [28]

Mantas Defendants contend also that the claims against Mantakounis should be dismissed for failure to state a claim upon which relief can be granted. This argument is grounded on Mantas Defendants' overly narrow reading of the Amended Complaint. In particular, Mantas Defendants assert, quite inaccurately, that the "Amended Complaint fails to allege or set forth any specific . . . actions that . . . Mantakounis . . . personally engaged in or performed . . . in the alleged scheme to defraud . . . [Standard]." (D.I. 84 at 44)

According to the Amended Complaint, Mantakounis is the owner of Mantas Painting. (D.I. 72 at ¶¶ 15, 152) It is averred that Mantas Painting performed painting work for Standard on a legitimate basis prior to the alleged participation of Mantas Painting and Mantakounis in the scheme to defraud Standard. The Amended Complaint indicates that said participation took the form of a "kickback" scheme whereby AS and MS awarded business to Mantas Painting and allowed Mantas to overcharge Standard for its work in exchange for payments by Mantas Painting and Mantakounis to AS and MS as well as their families. (See D.I. 72 at ¶¶ 152–158) It is further alleged that these alleged kickbacks, which were paid an-

---

and with Rule 15(a). (D.I. 84 at 33, 35) Since the Court already rejected defendants' arguments in connection with Standard's joinder of these parties with the filing of its Amended Complaint, Mantas defendants' jurisdictional arguments are equally unavailing.

27. Mantas defendants have not even attempted to cite any contrary authority nor have they attempted in any meaningful way to distinguish the cases cited by Standard from the case at bar. Defendants also have not cited any authorities indicating that a party is indispensable under Rule 19 if it may be jointly liable to the plaintiff or because the existing defendants may have contribution or indemnification claims against the absent party.

28. Defendants properly contend that even if the estate were an indispensable party, Rule 19(a) requires merely that the party "shall be joined."

Mantas Defendants maintain that Romano's joinder in this action "would not deprive the Court of jurisdiction over the subject matter of this action." (D.I. 84 at 39) They also assert that the Court would have personal jurisdiction over Romano. (D.I. 84 at 39) Accordingly, even assuming Romano were an indispensable party, it appears that joinder of Romano—not dismissal of Standard's action—would be the appropriate remedy for this Rule 19 problem. It is curious to note in this regard that Mantas Defendants, despite their apparent insistence that they have valid third-party claims against Romano for contribution or indemnification and notwithstanding their explicit contention that Romano is an indispensable party to this litigation, inexplicably have not moved for leave to join Romano.

nually for a number of years, corresponded to approximately 5% of the total payments made by Standard to Mantas Painting during those years.[29]

Contrary to Mantas Defendants' reading of Standard's Amended Complaint, it is clear that many of the averments of fact contained in the Amended Complaint regarding the above-described Mantas branch of the alleged fraud scheme are directed both against Mantas Painting *and against Mantakounis himself.* (See, e.g., D.I. 72 at ¶¶ 140, 157, 165) Hence, Mantakounis' assertion that the Amended Complaint should be dismissed as to him for failure to allege specific facts against him is without merit.

For the reasons stated, the Court will deny Mantas Defendants' motion to dismiss the Amended Complaint.

## VI. The Mantas Defendants' Motion for a Protective Order

Mantas Defendants move for entry of a protective order staying discovery in this action as to them. (D.I. 94) Mantas Defendants contend that discovery should not proceed at this stage of the action because, if the pursuant to their motion to dismiss, Mantas Defendants "are dismissed by the court as parties, then the Plaintiff would not be entitled to discovery from said Defendants." (D.I. 95 at 10) Mantas Defendants also appear to contend that they are entitled to entry of a protective order on the ground that Standard's discovery request is "an extremely burdensome, comprehensive, and detailed Request for Production of documents which will entail significant legal and accounting expenses to complete." (D.I. 95 at 4)

Defendants' argument that they are entitled to a protective order staying discovery as to them during the pendency of their motion to dismiss is without merit. This Court recently confronted a similar request and resolved the issue as follows:

> Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey basic discovery rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.

*Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.,* 707 F.Supp. 1429, 1441 (D.Del.1989). Similarly, in the instant case, Mantas Defendants improperly assume that their filing of a motion for a protective order permitted them to disregard Standard's discovery requests. Mantas Defendants' assumption is incorrect. In any case, the Court herein has found that Mantas Defendants' motion to dismiss will be denied since it is without merit. Accordingly, Mantas Defendants' argument that the pendency of this motion entitled them to an automatic, self-granted stay of discovery is moot.

[40] Standard's discovery request was served on Mantas Defendants on June 24, 1992. Mantas Defendants failed to respond to said request until on or around September 28, 1992, when they filed their motion for a protective order. Defendants' failure to provide a proper and timely response to Standard's discovery request constitutes a waiver of any and all objections to said request. *See, e.g., Daumer v. Allstate Ins. Co.,* Civ. No. 91–7570, 1992 WL 277650, *1, 1992 U.S. Dist. LEXIS 16184, *3 (E.D.Pa.1992) ("Failure to make timely objections [to document requests] constitutes a waiver of any objections [non-objecting party] might have had.") (citing *Usery v. Chef Italia,* 540 F.Supp. 587, 592 n. 13 (E.D.Pa.1982); *Davis v. Romney,* 53 F.R.D. 247, 248 (E.D.Pa.1971); *Cephas v. Busch,* 47 F.R.D. 371 (E.D.Pa.1969)); *Ap-*

---

29. This brief summary of Standard's claims against the Mantas defendants should make it obvious that the Court rejects defendants' contention that the Amended Complaint fails to comply with the modern "notice" pleading rules set forth in the Federal Rules of Civil Procedure. The averments against the Mantas defendants are not "vague or ambiguous" but instead are clear, specific and definite, providing a reasonably

*plied Biosystems, Inc. v. Cruchem, Inc.,*[30] Civ. No. 89–579–JRR, 1990 WL 495458 Memorandum Opinion, Roth, J. (Aug. 3, 1990) (copy attached to D.I. 96 at Exhibit f) (citing, *inter alia, Krewson v. Quincy,* 120 F.R.D. 6, 7 (D.Mass.1988) (defendant waived objections to document request by failing to serve timely response); *Perry v. Golub,* 74 F.R.D. 360, 363 (N.D.Ala.1976) (objection on grounds of privilege waived by failure to file timely objection)).

■ In any event, Mantas Defendants' contention that they are entitled to entry of a protective order because Standard's discovery request is "an extremely burdensome, comprehensive, and detailed Request for Production of documents which will entail significant legal and accounting expenses to complete" (D.I. 95 at 4) is not a proper basis for refusing to comply with Standard's appropriate document request. Mantas Defendants accordingly will be ordered to respond fully and promptly (within thirty days) to Standard's discovery requests.

### VII. Wilmington Trust Company's Non–Party Motion for a Protective Order

Standard served a subpoena duces tecum on non-party Wilmington Trust Company requesting production of bank records and financial statements concerning the party-defendants named in Standard's original Complaint. This request covered documents and records for the last fifteen years. Wilmington Trust staff, seeking to comply with the subpoena, retrieved approximately 2,500 pages of documents. (D.I. 63, Exhibit B at ¶ 3) It is alleged that bank staff "spent 56 hours collecting the information described by the Subpoena." (D.I. 63, Exhibit B at ¶ 4) Wilmington Trust allowed counsel for Standard to review the documents, but the parties have reached an impasse over who should bear the costs associated with this document request.

As a result of this dispute, Wilmington Trust has refused to provide Standard with copies of the 2,500 pages of documents without receiving payment for its expenses. Wilmington Trust seeks payment in the amount of $4.00 per page for copies of these documents, which is the fee the bank normally charges its customers for copies of their own bank records. Standard offered to pay $.20 per page for document copies, but Wilmington Trust declined the offer. Wilmington Trust filed the instant motion for a protective order in an effort to resolve this controversy.

Both Standard and Wilmington Trust agree that Rule 45 of the Federal Rules of Civil Procedure, which governs the use of subpoenas in civil litigation, controls here. Rule 45 recently was amended, although neither party addressed whether the amendments, which are substantial, are applicable to the instant motion. This parties have overlooked a significant issue since the new Rule 45 includes a provision, paragraph (2)(B) of subdivision (c), which states in part that "an order to compel production shall protect any person who is not a party ... from significant expense resulting from the inspection and copying commanded."

The amendments to Rule 45 became effective as of December 1, 1991, subsequent to the issuance of the present subpoena. The controversy now under consideration and the motion papers filed with respect thereto, however, arose after the amendments became effective. Another district court considered a factually similar situation and concluded the following:

> Although the present subpoena was issued before the [new] Rule [45] became effective on December 1, 1991, this motion was filed after that date. The implementing order for the 1991 amendments to the Rules states that they "shall govern all proceedings in civil actions thereafter commenced and, insofar as just and practicable, all proceedings in civil actions then

"short and plain" statement of Standard's claims. *See* Fed.R.Civ.P. 12(e), 8(a).

**30.** Mantas defendants argue that this case is not applicable hereto because it "presupposes that the Defendant is in the case and a proper party thereto." (D.I. 97 at 3) As discussed at length in the foregoing, Mantas defendants became "proper" parties to this case as of May 29, 1992 when Standard filed its Amended Complaint. Defendants' contention that the *Apollo Computer* case does not apply to the facts at bar is thus without merit.

pending." Supreme Court Order of April 30, 1991. Thus, no matter which date is taken as the commencement of this litigation, new Rule 45(c) should apply. Accordingly, any order requiring [the non-party subject to this subpoena] to comply with the subpoena must also require that [the non-party] ... be "protected from significant expense" in producing the requested documents.

*In re Exxon Valdez*, Misc. Action No. 92–98, 142 F.R.D. 380, 383, (D.D.C.1992) (footnote omitted). Under this reasoning, it appears that new Rule 45 would control the motion at bar. However, since the parties proceeded on the assumption that old Rule 45 applies here, the Court will analyze this issue under both the new rule and the old rule.[31]

The previous version of Rule 45 "gave district courts discretion to condition the enforcement of subpoenas on the [serving party's] paying for the [non-party's] costs of production." *In re Exxon Valdez, supra,* 142 F.R.D. 380, 383 Under the old Rule 45, "[t]ypically a non-party [was] required to absorb the costs of complying with a subpoena duces tecum." *Cantaline v. Raymark Industries, Inc.,* 103 F.R.D. 447, 450 (S.D.Fla. 1984). However, "[o]ccasionally a moving party [was] ordered to advance costs to a non-party as a condition to denying a motion to quash if the non-party [ ] demonstrate[d] that compliance would require the expenditure of an excessive amount of time and money." *Id.* Indeed, this Court addressed the issue at bar in a previous case that arose under the old Rule 45. *Celanese Corp. v. E.I. duPont de Nemours & Co.,* 58 F.R.D. 606 (D.Del.1973). In responding to a motion to compel the non-party's compliance with the subpoena duces tecum, this Court decided the following in *Celanese,* 58 F.R.D. at 612:

> The Court is fully aware that the documents which will be ordered produced, as indicated by the present record, are very numerous and the period covered extends over an inordinate number of years. The Court is also aware that the search and production of the broad category of documents will be time-consuming and expensive for DuPont which is not party to the Florida litigation. The Court, therefore, will order that the search begin immediately, that the production be made weekly as the documents are collected, and that petitioners will be required to reimburse DuPont's reasonable expenses for the search and production.

In resolving this issue under the former version of Rule 45, "courts generally review such factors as 1) the scope of the discovery; 2) the depth of the invasion involved in the request; 3) the extent to which the producing party must separate responsive information from privileged or even irrelevant material; and, 4) the reasonableness of the expenses involved in making the production." *Onan Corp. v. GLT Industries,* No. 87 C 5592, 1988 WL 2804 (N.D.Ill.1988) (citing *United States v. CBS, Inc.,* 103 F.R.D. 365 (C.D.Cal.1984); *Celanese Corp., supra* ). "If in considering these factors, a court finds that the discovery request was particularly onerous, it may award the nonparty the costs or expense associated with producing the information." *Onan Corp.,* 1988 WL 2804, *1. It should be noted, however, that "[w]hile these considerations are important, [the Court] do[es] not view them as inflexible or exclusive." *United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 372–73 n. 9 (9th Cir.1982), *cert. den. CBS, Inc. v. Columbia Pictures Industries, Inc.,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982).

The Ninth Circuit explained the underpinnings of the discretionary rule which allows district courts to award non-parties production costs incurred in responding to a sub-

---

31. It should be noted that Standard's brief filed in response to Wilmington Trust's motion indicates that plaintiff is aware that Rule 45 was recently amended. (See D.I. 65 at 2 n. 1) Nonetheless, as noted above, plaintiff's counsel failed to address whether the new Rule 45 applies here. The Court is convinced, consistent with the reasoning of the district court in the *Exxon Valdez* case, that if Standard moved to compel Wilmington Trust's compliance with the instant subpoena, then new Rule 45 would apply and any order requiring such compliance would be required to ensure that this non-party be "protected from significant expense" in producing the requested documents.

poena duces tecum in the following quoted excerpt:

Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party. Although we decline to curtail district courts' discretion over the discovery process by adopting formal guidelines favoring nonparty reimbursement ..., we nevertheless emphasize that a witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party.

*Columbia,* 666 F.2d at 371–72 (footnotes omitted).

■ The Court thus finds that even under the prior unamended version of Rule 45, it is within this Court's discretion to deny Wilmington Trust's motion for a protective order,[32] and to order its compliance with the instant subpoena conditioned on Standard's payment of reasonable production costs to the bank. *See, e.g., Onan Corp.,* 1988 WL 2804, *1; *Dyrelite Corp. v. Juno Constr. Corp.,* Civ. Action No. 81–1441–C, 33 Fed. R.Serv.2d (Callaghan) 501 (D.Mass. Jan. 7, 1982).[33] In the instant case, it is clear that Standard's document request was very burdensome and onerous. The record indicates, as noted above, that Wilmington Trust staff already "spent 56 hours collecting the information described by the Subpoena." (D.I. 63, Exhibit B at ¶ 4) Although Standard has substantially narrowed the scope of documents sought from Wilmington Trust in response to the bank's objections (See D.I. 65,

Exhibit A), it is clear that Standard was enabled to narrow its request partially as a result of the significant time expended by bank staff in researching the numerous accounts relevant to the many defendants referenced in the subpoena. In any case, Standard still seeks 2,500 pages of documents relating to fifteen years of activity on nearly thirty different accounts. Accordingly, under old Rule 45(b), it is within the Court's discretion, and the Court will exercise its discretion in this regard, to deny Wilmington Trust's motion conditioned on the requirement that Standard reimburse the non-party bank for its reasonable production costs.

■ Assuming in the alternative that the new Rule 45 applies, the Court nonetheless finds that it has discretion (or perhaps an obligation) to order Wilmington Trust's compliance with the subpoena so long as Standard reimburses the bank for its reasonable production costs. *See In re Letters Rogatory Issued by Nat. Court of First Instance in Commercial Matters etc.,* 144 F.R.D. 272 (E.D.Pa.1992) (court relied on new Rule 45 in denying non-party motion to quash subpoena duces tecum, but compelling subpoena compliance conditioned on requirement that non-party receive reimbursement for reasonable production and copying costs).

As noted above, new Rule 45 contains a provision under which an order to compel document production by a non-party must "protect" the non-party "from significant expense resulting from the inspection and copying commanded." Fed.R.Civ.P. 45(c)(2)(B). Significantly, the Advisory Committee Notes on the 1991 Amendments to Rule 45 state as follows with respect to an order which responds to a non-party motion to quash or modify a subpoena duces tecum: "Subparagraph (c)(3)(B) identifies circumstances in

---

**32.** Although Wilmington Trust's motion is styled as a "Non–Party Motion for a Protective Order", the Court will treat the motion as a motion to quash or modify the subpoena duces tecum.

**33.** The former version of Rule 45(b) specifically provided as follows:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; *but the court,* upon motion made

promptly and in any event at or before the time specified in the subpoena for compliance therewith, *may* (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) *condition denial of the motion upon advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things.*

(Emphasis supplied).

which a subpoena should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the witness. *An additional circumstance in which such action is required is a request for costly production of documents; that situation is expressly governed by subparagraph [c](2)(B)."* See also Practice Commentary, C45–21, 28 U.S.C.A., Rule 45 at 389 (If the court grants a motion to compel a non-party's compliance with a subpoena duces tecum, "the court is required to ('shall') include in the order a provision for defraying the expenses that the production, inspection, copying, etc., may require."); *and id.* at 393, where the commentator states the following:

> Paragraph (2)(B) of subdivision (c) is the provision that explicitly requires the court, when it compels a nonparty to produce documents or other tangible things, to protect that person from 'significant expense' incurred in carrying out the direction. In its notes on paragraph (3)(B), the committee again calls attention to that situation, explicitly referring to paragraph (2)(B)—inadvertently identifying it as in subdivision (b) instead of subdivision (c)—and thus highlighting once again the committee's concern, and perhaps even preoccupation, with protecting nonparties from undue expense connected with carrying out a subpoena duces tecum.

Accordingly, as indicated above, the Court finds that under the amended Rule 45, which presently is in effect, Wilmington Trust cannot be compelled by court order to comply with the subpoena at issue here unless the Court ensures that the non-party bank is "protected from significant expense" in producing the required documents.

■ Although the Court finds that the amount sought by Wilmington Trust, i.e., $4.00 per copy, the copying fee the bank charges to its customers, apparently at a profit to the bank, is unreasonable, the Court will order Standard to pay the bank $.50 per copy, which is the amount the District of Delaware clerk's office charges for copying of documents.[34] It is unclear whether the "56 hours [spent by bank staff] collecting the information described by the Subpoena" (D.I. 63, Exhibit B at ¶ 4) includes time spent in making copies of the 2,500 pages of documents. For the reasons discussed at length in the foregoing, it appears, however, that *the non-party bank is entitled to reimbursement of all reasonable charges incurred in both producing and copying these documents.*

In order to resolve this matter promptly, the Court will order Wilmington Trust to comply with the subpoena by providing Standard with the requested 2,500 pages of documents. The Order, however, will be conditioned on Standard's prepayment to Wilmington Trust of $1,750, an amount which the Court finds, on the record as it stands today, to be reasonable reimbursement for the bank's production and copying costs.

## VIII. Conclusion

For the reasons stated above, the Court will deny as moot the following motions and applications: (1) Defendants' motion to dismiss (D.I. 18) the original Complaint; (2) Defendants' application for oral argument (D.I. 40) on its motion to dismiss; and (3) AS's motion to compel (D.I. 31) Standard's production of certain insurance policies.

Consistent with the foregoing discussion, the Court will grant in part and deny in part Defendants' motion to dismiss (D.I. 75) the Amended Complaint. The Court will grant Defendants' motion to dismiss the Amended Complaint as to Standard's RICO section 1962(a) and section 1962(b) claims. The Court also will grant Defendants' motion as to Standard's section 1962(c) claims against Company Defendants AMB, SS & H Realty, SHS Holding and All–American. As to Standard's remaining claims against Defendants, their motion to dismiss will be denied.

The Court will deny Mantas Defendants' motions to dismiss (D.I. 83 and D.I. 85) the Amended Complaint and also will deny Mantas Defendants' motion for a protective order (D.I. 94) because, as discussed above, the

---

**34.** The Court notes that according to the clerk's office, the $.50 per page copy fee charged by the court clerk takes into account all charges associated with document copying, including a reasonable amount for the services of the court employee who actually performs the copying.

grounds given by Mantas Defendants in support of these motions are without merit. The Court will deny Mantas Defendants' applications for oral argument on these motions for the reasons already given.

The Court will deny Standard's motion for entry of a confidentiality order (D.I. 62) with leave to renew without prejudice, thereby affording the parties an additional opportunity to enter into a confidentiality stipulation comporting with the Court's findings and recommendations discussed in this Opinion.

The Court will grant in full Standard's motion to compel (D.I. 69) Defendants' compliance with its requests for production of documents. The Court will grant in part and deny in part Defendants' motion to compel (D.I. 67) Standard's compliance with its document requests. Specifically, the Court will grant Defendants' motion to compel except as to Defendants' document request Nos. 1, 2, 3, 6, 10, 15, 16, 22, 24, 25, 26, 27 and 28. As to these requests, the Court will deny Defendants' motion without prejudice to renew, thereby affording the parties an opportunity to negotiate in good faith the proper scope of these discovery requests.

Finally, as to non-party Wilmington Trust's motion for a protective order (D.I. 63) (which the Court has treated as a motion to quash or modify the subpoena duces tecum served on the bank by Standard), the Court will deny the motion and will order Wilmington Trust to comply with Standard's document request by providing plaintiff with the requested 2,500 pages of bank documents. This order will be conditioned, however, on Standard's prepayment to Wilmington Trust of $1,750, an amount which the Court finds to be reasonable reimbursement for the bank's significant production and copying expenses that it allegedly incurred in its efforts to comply with the subpoena.

An Order consistent with this Opinion shall issue.